UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEO DULAY,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SPECIALIZED LOAN SERVICING, LLC, et al.,<br><br>　　　　Defendants. | Case No. 18-cv-01488-DMR<br><br>**ORDER ON MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 10 |

Defendants Specialized Loan Servicing, LLC ("SLS") and The Bank of New York Mellon FKA The Bank of New York, as Trustee for the Certificateholders of the CWABS, Inc., Asset-Backed Certificates, Series 2006-13 ("Bank of New York") move the court to dismiss Plaintiff Leo Dulay's first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. [Docket No. 10.] The court held a hearing and ordered the parties to submit supplemental briefing, which the parties timely filed. [Docket Nos. 22, 23, 26, 27.] For the following reasons, Defendants' motion is granted in part and denied in part.

**I.　BACKGROUND**

In this mortgage-related case, Dulay challenges Defendants' conduct with respect to his efforts to obtain a short sale of his property following Defendants' institution of foreclosure proceedings. He makes the following allegations in his first amended complaint ("FAC"), all of which are taken as true for purposes of this motion.[1] Dulay owned real property at 5100

---

[1] When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted).

Deerspring Way in Antioch, California ("the property"). FAC ¶ 8. In June 2006, Dulay obtained a first lien loan for the property from Countrywide Home Loans, Inc. in the amount of $594,000. In March 2012, Bank of New York assumed the beneficial interest in the loan. SLS became the loan servicer in September 2014. *Id*. at ¶ 9.

In January 2016, Dulay fell behind on his mortgage payments. He submitted a loss mitigation application to SLS in April 2016. *Id*. at ¶ 10. In July 2016, Dulay sent SLS a request to conduct a short sale of the property. Following Dulay's submission of documents requested by SLS, SLS informed Dulay in October 2016 that he was approved for a short sale as long as he listed the property at fair market value, allowed an appraisal, and provided documentation of any offers to purchase the property. *Id*. at ¶¶ 10, 11. Dulay complied with all of these conditions. *Id*. at ¶ 11. Dulay received multiple offers to purchase the property in 2017; however, SLS rejected each offer as too low. SLS closed the short sale review in July 2017. *Id*.

In September 2017, SLS reopened Dulay's short sale review at his request. *Id*. at ¶ 12. On September 19, 2017, SLS notified Dulay that he was "contingently approved for the short sale program." Thereafter, Dulay submitted a short sale offer for the property of $420,000. *Id*. Dulay alleges that SLS sent him a letter dated September 28, 2017 "which stated that the short sale offer was approved." *Id*. The letter also stated that Dulay "may also be required to provide offer approval from any additional lien holders on the property." *Id*. (emphasis in original).[2] Dulay

---

[2] Defendants submitted a September 28, 2017 letter from SLS to Dulay with the heading, "Short Sale Contingent Approval." McMahon Decl., Mar. 15, 2018 ¶ 4, Ex. 1. Defendants ask the court to consider it, because its contents are alleged in the FAC. *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) (courts may consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment).

As noted, Dulay alleges that he received a September 28, 2017 letter from SLS that stated that Dulay "may also be required to provide offer approval from any additional lien holders on the property." FAC ¶ 12 (emphasis in original). That statement does not appear in the letter submitted by Defendants. At the hearing, Dulay's counsel confirmed the existence of two *additional* letters dated September 28, 2017, one of which contains the statement "may also be required . . ." and another letter that identified a new single point of contact, "Marcum." *See* FAC ¶ 13. In other words, Dulay received at least three letters from Defendants dated September 28, 2017, but Dulay alleges the contents of only two such letters in the FAC. *See id*. at ¶¶ 12, 13. Accordingly, the court declines to consider the letter submitted by Defendants with their motion, as its contents are *not* alleged in the FAC.

2

admits that there was a second lien holder on his loan, Trinity Financial. *See* FAC ¶ 14. Following his receipt of the September 28, 2017 letter, Dulay accepted the short sale offer from the buyer and submitted to SLS the buyer's proof of funds. Thereafter, escrow was opened for the sale of the property. *Id*. at ¶ 12.

Dulay alleges that he "was given numerous single points of contact to assist him with the short sale." *Id*. at ¶ 13. Dulay received three letters dated September 27, 2017, September 28, 2017, and September 29, 2017, each identifying a different individual ("Noe," "Marcum," and "Tricinda," respectively) as his single point of contact, and each providing only the general SLS phone number as the individuals' contact information. *Id*. Dulay alleges that he was never able to speak with any of these three individuals. *Id*.

On November 7, 2017, two days before the November 9, 2017 closing date, Trinity Financial "requested that SLS provide a payoff quote for its loan and reinstatement figures for the loan, so that the short sale of the property could be completed." *Id*. at ¶ 14. On the same day, Dulay "contacted Defendant and requested to speak with his single point of contact to obtain an update on the short sale." *Id*. However, he was unable to speak with his single point of contact. Instead, he "spoke with another representative regarding the short sale offer and the request of the second lien holder and was informed that there were no issues with the short sale." *Id*. The individual with whom Dulay spoke "did not mention that the property was scheduled to be sold on November 15, 2017." *Id*.

On November 14, 2017, SLS sent Dulay two letters stating that his short sale request was still under review. It sent Dulay a third letter on the same day requesting that Dulay authorize Trinity Financial to receive information about his loan. *Id*. at ¶ 15. Before Dulay received these letters, Defendants caused the property to be sold at a foreclosure sale on November 15, 2017. *Id*.

Dulay filed this lawsuit on December 28, 2017. [Docket No. 1 (Notice of Removal) ¶ 2.] He alleges three claims for relief in the FAC: 1) violation of California Civil Code section 2924.11; 2) violation of California Civil Code section 2923.7; and 3) violation of 12 C.F.R. §

1024.41(g). Defendants move to dismiss.

## II. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

As a general rule, a court may not consider "any material beyond the pleadings" when ruling on a Rule 12(b)(6) motion. *Lee*, 250 F.3d at 688 (citation and quotation marks omitted). However, "a court may take judicial notice of 'matters of public record,'" *id*. at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch*, 14 F.3d at 454. The court need not accept as true allegations that contradict facts which may be judicially noticed. *See Mullis v. U.S. Bankr. Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

## III. REQUEST FOR JUDICIAL NOTICE

Defendants request that the court take judicial notice of document titled "Voluntary

4

1  Petition for Individuals Filing for Bankruptcy," which was filed by Dulay and Charlynne Rose

2  Dulay on February 24, 2017 in Case No. 17-40531 before the United States Bankruptcy Court for

3  the Northern District of California. [Docket No. 10-1 (Request for Judicial Notice) Ex. 1

4  (Bankruptcy Petition).] It appears that this document was filed to initiate Chapter 7 bankruptcy

5  proceedings.

Defendants ask the court to take judicial notice of the document, in which Dulay and Charlynne Rose Dulay represent that there were three sets of lienholders with interests secured by the property: Defendant SLS; Trinity Financial; and Virgil and Sandra Burton. Bankruptcy Petition at 21-22. According to Defendants, this information is relevant because the September 28, 2017 letter submitted with their motion listed "Junior Lien Approval Letter[s]" as required documentation, due 48 hours in advance of closing the short sale of the property, and Dulay does not allege that he submitted written approval by either set of lienholders by that deadline. However, as discussed above, the court cannot consider the September 28, 2017 letter Defendants submitted with their motion, as its contents were not alleged in the FAC. Since the existence of multiple lienholders is not relevant to Dulay's claims, the court declines to take judicial notice of the bankruptcy petition.

## IV. DISCUSSION

### A. Claim One—Violation of California Civil Code § 2924.11(d)

Dulay's first claim for relief alleges a violation of California Civil Code section 2924.11(d). On December 28, 2017, the date Dulay filed his complaint, section 2924.11(d) provided the following:

> A mortgagee, beneficiary, or authorized agent shall record a rescission of a notice of default or cancel a pending trustee's sale, if applicable, upon the borrower executing a permanent foreclosure prevention alternative. In the case of a short sale, the cancellation of the pending trustee's sale shall occur when the short sale *has been approved by all parties* and proof of funds or financing has been provided to the mortgagee, beneficiary, or authorized agent.

Cal. Civ. Code § 2924.11(d) (2017) (emphasis added). This section remained in effect until January 1, 2018, and was repealed as of that date. Cal. Civ. Code § 2924.11(j) (2017). Effective January 1, 2018, the language cited above in section 2924.11(d) was removed from the statute.

*See* Cal. Civ. Code § 2924.11 (2018).

Defendants initially argued that Dulay has not pleaded sufficient facts to state a claim under section 2924.11, because he does not allege that the short sale was "approved by all parties," as required by the statute. According to Defendants, the term "all parties" includes all affected lienholders. Defendants pointed out that Dulay admits in the FAC that there was a second lien held by Trinity Financial. *See* FAC ¶ 14. Although he alleges that "the short sale was approved by Defendants, [himself] and the buyer," FAC ¶ 21, he does not allege that he obtained the required approval from Trinity Financial, the other lienholder. Accordingly, Defendants argued, Dulay has failed to state a claim under section 2924.11(d).

The pre-2018 version of the statute does not define the terms "approved" and "by all parties" as used in the phrase, "when the short sale has been approved by all parties." At the hearing, the court ordered the parties to submit supplemental briefing regarding the meaning of that phrase as used in section 2924.11(d). [Docket No. 21.]

In their supplemental brief, Defendants argued for the first time that Dulay's section 2924.11(d) claim was terminated when that statute was repealed without a savings clause. [Docket No. 22 at 9-10.] The court ordered Dulay to file a supplemental brief responding to Defendants' argument, which he timely filed. [Docket No. 23.] Having reviewed the parties' briefing and the relevant authority, the court finds that it need not resolve the meaning of the phrase "when the short sale has been approved by all parties" as used in section 2924.11(d), because Dulay's claim was terminated upon repeal of the statute.

Under California law, "absent a savings clause, repeals of statutory enactments must apply retroactively to pending cases." *Jacobik v. Wells Fargo Bank, N.A.*, No. 17-CV-05121, 2018 WL 1184812, at *3 (N.D. Cal. Mar. 7, 2018) (quoting *Palmer v. Stassinos*, 419 F. Supp. 2d 1151, 1155 (N.D. Cal. 2005 (citing Cal. Gov't Code § 9606)). The California Supreme Court has explained that "[a]lthough the courts normally construe statutes to operate prospectively, the courts correlatively hold under the common law that when a pending action rests solely on a statutory basis, and when no rights have vested under the statute, a repeal of [the] statute without a saving clause will terminate all pending actions based thereon." *Palmer*, 419 F. Supp. 2d at 1156

6

1  (quoting *Governing Board v. Mann*, 18 Cal. 3d 819, 829 (1977) (quotation omitted)). "The justification for this rule is that all statutory remedies are pursued with full realization that the legislature may abolish the right to recover at any time." *Id.* "Repeal of a statute terminates all claims under that statute, even for alleged violations of the statute that occurred before the repeal." *Jacobik*, 2018 WL 1184812, at *3 (citing *Beverly Hilton Hotel v. Workers' Comp. Appeals Bd.*, 176 Cal. App. 4th 1597, 1602, 1611 (2009)).

Notwithstanding the foregoing principle, "[w]here the Legislature repeals a statute but intends to save the rights of litigants in pending actions, it may accomplish that purpose by including an express saving clause in the repealing act." *Bourquez v. Super. Ct.*, 156 Cal. App. 4th 1275, 1284 (2007). However, "[a]n express saving clause in a repealing statute is not required in order to prevent the destruction of rights existing under a former statute, if the intention to preserve and continue such rights is otherwise clearly apparent. Thus, if it can be gathered from any act on the same subject passed by the [L]egislature at the same session that it was the legislative intent that pending proceedings should be saved, it will be sufficient to effect that purpose." *Id.* (quotation omitted); *see also In re Pedro T.*, 8 Cal. 4th 1041, 1049 (1994) ("what is required is that the Legislature demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it." (emphasis removed)).

Here, section 2924.11(d) was repealed on January 1, 2018 and does not contain an express savings clause. *See* Cal. Civ. Code § 2924.11(j) (2017) ("This section shall remain in effect only until January 1, 2018, and as of that date is repealed . . . unless a later enacted statute . . . deletes or extends that date."). The pre-2018 version of section 2924.11 included three substantive provisions that governed circumstances prohibiting a mortgage servicer, mortgagee, trustee, or beneficiary from taking certain actions when a foreclosure prevention alternative is approved or executed. These provisions were subsections (a), (b), and (d), which is the subsection under which Dulay seeks relief. In the version that became effective on January 1, 2018, subsections (a) and (b) remained in the statute but were relabeled to become subsections (c) and (d), respectively.

7

However, subsection (d) was completely removed from the statute.[3] Thus, the operative version of section 2924.11 has no provision that requires a mortgagee, beneficiary, or authorized agent to cancel a pending trustee's sale in the case of a short sale if certain requirements have been met.

"As a general rule, in construing statutes, [courts] presume the Legislature intends to

---

[3] The pre-2018 version of section 2924.11(a) states the following:

> (a) If a foreclosure prevention alternative is approved in writing prior to the recordation of a notice of default, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default under either of the following circumstances:
>
> (1) The borrower is in compliance with the terms of a written trial or permanent loan modification, forbearance, or repayment plan.
>
> (2) A foreclosure prevention alternative has been approved in writing by all parties, including, for example, the first lien investor, junior lienholder, and mortgage insurer, as applicable, and proof of funds or financing has been provided to the servicer.

Cal. Civ. Code § 2924.11(a) (2017). The pre-2018 version of section 2924.11(b) states the following:

> (b) If a foreclosure prevention alternative is approved in writing after the recordation of a notice of default, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of sale or conduct a trustee's sale under either of the following circumstances:
>
> (1) The borrower is in compliance with the terms of a written trial or permanent loan modification, forbearance, or repayment plan.
>
> (2) A foreclosure prevention alternative has been approved in writing by all parties, including, for example, the first lien investor, junior lienholder, and mortgage insurer, as applicable, and proof of funds or financing has been provided to the servicer.

Cal. Civ. Code § 2924.11(b) (2017).

As noted above, the version of section 2924.11 that went into effect on January 1, 2018 retained these two provisions in renumbered form: the current, operative versions of sections 2924.11(c) and 2924.11(d) are identical to the former sections 2924.11(a) and 2924.11(b).

The pre-2018 version of section 2924.11 contained several other provisions regarding foreclosure prevention alternatives, none of which are relevant to the question of whether claims under the pre-2018 version of section 2924.11(d) survived its repeal.

8

change the meaning of a law when it alters the statutory language, as for example when it deletes express provisions of the prior version." *Jacobik*, 2018 WL 1184812, at *4 (quoting *Charton v. Harkey*, 247 Cal. App. 4th 730, 741 (2016) (quotation omitted)). "The Legislature's repeal of a prior statute together with its enactment of a new statute on the same subject . . . with significant differences in language, strongly suggests the Legislature intended to change the law." *Jacobik*, 2018 WL 1184812, at *4 (quoting *Charton*, 247 Cal. App. 4th at 741 (quotation omitted)). Here, the Legislature's decision to repeal section 2924.11(d) while retaining the other substantive provisions of the pre-2018 version of the statute indicate that the Legislature did not intend to preserve the right to cancellation of a pending trustee's sale in the event of a short sale in certain circumstances.

Without citing any legislative history, Dulay argues that the post-2018 version of section 2924.11 "was enacted in the same legislative bill as the pre-2018 version of Section 2924.11 passed by the Legislature in 2012," which somehow demonstrates that violations of the former section 2924.11(d) "were preserved" in the new version. Unsurprisingly, Dulay provides no support for this argument, and it is difficult to find any merit in it, given the fact that section 2924.11(d) indisputably went off the books as of January 1, 2018. If anything, the fact that the pre- and post-2018 versions of the statute were enacted at the same time tends to support that the Legislature intended to automatically repeal subsection (d) as of January 1, 2018, absent further legislative action.

The court concludes that the Legislature repealed the 2017 version of section 2924.11(d) without an express savings clause or other indication of its intent to maintain the rights conferred therein. Accordingly, the January 1, 2018 repeal of section 2924.11(d) terminated Dulay's claim under that statute. His section 2924.11(d) claim is therefore dismissed with prejudice. In his supplemental brief, Dulay requests leave to amend to state a claim under the 2018 versions of sections 2924.11(a) and 2924.11(d). [Docket No. 27 at 2-3.] Dulay is granted leave to amend the complaint to state a claim under the operative version of section 2924.11.

### B. Claim Two—Violation of California Civil Code § 2923.7

Dulay's second claim for relief alleges a violation of California Civil Code section 2923.7.

The California legislature enacted a "single point of contact provision" ("SPOC") in order "to prevent borrowers from being given the run around." *Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1151 (N.D. Cal. 2013) (citing *Jolley v. Chase Home Fin., LLC*, 213 Cal. App. 4th 872, 904-05 (2013)). Specifically, section 2923.7 provides: "Upon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a [SPOC] and provide to the borrower one or more direct means of communication with the [SPOC]." Cal. Civ. Code § 2923.7(a). The SPOC is responsible for timely and adequately assisting the borrower, such as communicating "the process by which a borrower may apply for an available foreclosure prevention alternative," coordinating the receipt of documents, notifying the borrower if any documents are missing, and adequately informing the borrower of the status of a foreclosure prevention alternative. Cal. Civ. Code § 2923.7(b). Section 2923.7 does not itself contain a private right of action. *See, e.g.*, *Taylor v. CitiMortgage, Inc.*, No. 1:17-cv-01231-DAD-JLT, 2017 WL 6055837, at *4 (E.D. Cal. Dec. 7, 2017) (citing cases). Instead, California Civil Code section 2924.12 provides that a borrower may bring an action for "material" violations of section 2923.7. Cal. Civ. Code § 2924.12(a)(1), (b).

At the hearing, Dulay's counsel stated that his section 2923.7 claim is based upon an alleged violation of subsection (b)(3). Section 2923.7(b)(3) provides that an SPOC must "[have] access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative." Dulay alleges that Defendants violated this SPOC requirement by failing to provide him with an SPOC who could provide him with information about the status of the short sale or the existence of the scheduled foreclosure sale. FAC ¶¶ 25-26. According to Dulay, he contacted SLS on November 7, 2017 and asked to speak with his SPOC "to obtain an update on the short sale." *Id*. at ¶ 26. However, he was unable to speak with his SPOC, and instead spoke with another representative "regarding the short sale offer and the request of the second lien holder and was informed that there were no issues with the short sale." *Id*. The individual with whom he spoke did not mention the upcoming trustee's sale scheduled for November 15, 2017. Dulay alleges that if he had ever been informed that Defendants required a written approval of the short sale from Trinity Financial, he "would

have provided it and would not have lost his property to foreclosure." *Id*.

Defendants move to dismiss this claim on the ground that Dulay does not allege a material violation of the statute. According to Defendants, Dulay waited to contact SLS on the day that his pre-closing documents were due, citing the September 28, 2017 letter attached to their motion. Mot. 5. They also argue that SLS had informed Dulay of the steps he needed to take to avoid foreclosure in the same September 28, 2017 letter, including submitting certain "Pre Closing documents." *Id*. at 6. Therefore, Defendants argue, Dulay "fails to allege how the single point of contact materially affected Plaintiff's failure to submit the required Pre Closing documents to SLS on time." *Id*. These arguments rest entirely on the September 28, 2017 letter attached to their motion, which the court may not consider for the reasons previously discussed.

A violation of the Homeowners' Bill of Rights is "material" if it "affected [the plaintiff's] loan obligations" or the loan modification process. *Cardenas v. Caliber Home Loans, Inc*., 281 F. Supp. 3d 862, 869 (N.D. Cal. 2017) (quoting *Johnson v. PNC Mortg*., No. C 14-02976 LB, 2014 WL 6629585, at *9 (N.D. Cal. Nov. 21, 2014)). Dulay alleges that he attempted to contact his SPOC on November 7, 2017 but was unable to speak with the SPOC. Instead, he spoke with another representative who informed him that there were "no issues with the short sale" and failed to inform him of the trustee's sale. These facts are sufficient to allege a material violation of section 2923.7(b)(3), because Dulay alleges that if he had been informed that he needed to submit written approval of the short sale from Trinity Financial, he "would have provided it and would not have lost his property to foreclosure." FAC ¶ 26.

Dulay's counsel further stated at the hearing that the SPOC's failure to inform him on November 7, 2017 that additional documents were needed in order to proceed with the short sale violated subsections (b)(4) and (b)(5). Section 2923.7(b)(4) provides that an SPOC is responsible for "ensuring that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any." Section 2923.7(b)(5) provides that an SPOC must "[have] access to individuals with the ability and authority to stop foreclosure proceedings when necessary." Counsel acknowledged that the FAC does not clearly plead these violations and asked for leave to amend the complaint to allege additional facts in support of these claims. Dulay is

11

granted leave to amend to plead violations of sections 2923.7(b)(4) and (b)(5).

**C.  Claim Three—Violation of 12 C.F.R. § 1024.41(g)**

Dulay's third claim for relief alleges a violation of 12 C.F.R. § 1024.41(g). That provision states the following:

> If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless:
>
> (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;
>
> (2) The borrower rejects all loss mitigation options offered by the servicer; or
>
> (3) The borrower fails to perform under an agreement on a loss mitigation option.

12 C.F.R. § 1024.41(g). A "loss mitigation option" is defined as "an alternative to foreclosure offered by the owner or assignee of a mortgage loan that is made available through the servicer to the borrower." 12 C.F.R. § 1024.31.

Dulay alleges that he submitted, and Defendants approved, his loss mitigation application seeking a short sale of the property on or around September 28, 2017. However, Defendants sold the property at a foreclosure sale on November 15, 2017, which was more than 37 days after the application was approved. FAC ¶ 32. Accordingly, Dulay argues that Defendants violated section 1024.41(g).

Defendants argue that Dulay's section 1024.41(g) claim fails because he "fail[ed] to perform" under the parties' agreement on the short sale. *See* 12 C.F.R. § 1024.41(g)(3). Specifically, they argue that SLS expressly conditioned its approval of the short sale "on the fulfillment of the conditions" listed in the September 28, 2017 letter, and that it reserved "the right to terminate the short sale" if the final closing instructions were "not followed in their entirety."

12

Mot. 7. This argument is solely based on the September 28, 2017 letter attached to Defendants' motion. As discussed above, the court cannot consider the letter attached to Defendants' motion as its contents were not alleged in the FAC. Moreover, the September 28, 2017 letter that *is* alleged in the FAC did not condition SLS's approval of the short sale on approval from all lien holders on the property; it stated only that Dulay "<u>may</u> also be required to provide offer approval from any additional lien holders on the property." *See* FAC ¶ 12. Since Trinity Financial's approval was not listed as a mandatory condition of SLS's approval, Defendants' argument that Dulay "failed to perform" under the parties' agreement is without merit. Defendants make no other arguments in support of their motion to dismiss this claim. Accordingly, the motion is denied as to Dulay's third claim for relief.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. Any amended complaint must be filed within 14 days of the date of this order.

**IT IS SO ORDERED.**

Dated: July 30, 2018



Donna M. Ryu
United States Magistrate Judge

13